1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8                      CENTRAL DISTRICT OF CALIFORNIA

9

10  SHELLIE M. HONORE,                )    No. SACV 07-0894-RC
                                      )
11            Plaintiff,              )
                                      )    OPINION AND ORDER
12        v.                          )
                                      )
13  MICHAEL J. ASTRUE,                )
    Commissioner of Social Security,  )
14                                    )
              Defendant.              )
15  _____)

16

17       Plaintiff Shellie M. Honore filed a complaint on August 17, 2007,

18  seeking review of the Commissioner's decision denying her applications

19  for disability benefits.  The Commissioner answered the complaint on

20  January 14, 2008, and the parties filed a joint stipulation on

21  February 28, 2008.

22

23                            **BACKGROUND**

24                                **I**

25       On February 12, 2004 (protective filing date), plaintiff applied

26  for disability benefits under both Title II of the Social Security Act

27  ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program

28  ("SSI") of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an

1  inability to work since December 1, 2002, due to bipolar disorder,
2  anxiety, and depression.  Certified Administrative Record ("A.R.") 3,
3  107-11, 149, 158.[1]  The plaintiff's applications were initially denied
4  on September 14, 2004, and were denied again on April 7, 2005,
5  following reconsideration.  A.R. 3, 75-87.  The plaintiff then
6  requested an administrative hearing, which was held before
7  Administrative Law Judge Joseph D. Schloss ("the ALJ") on July 10 and
8  December 20, 2006.  A.R. 73-74, 335-65.  On February 8, 2007, the ALJ
9  issued a decision finding plaintiff is not disabled.  A.R. 8-20.  The
10  plaintiff appealed this decision to the Appeals Council, which denied
11  review on June 13, 2007.  A.R. 4-7.

12

13                                    II

14     The plaintiff, who was born on April 26, 1966, is currently 42
15  years old.  A.R. 107.  She completed two years of college, received
16  training as a vocational counselor, and previously worked as a
17  housekeeper and counselor.  A.R. 112-19, 122, 127, 150, 155, 159-60,
18  162, 174-81.

19

20     The plaintiff has a long history of polysubstance abuse,
21  including amphetamines, cocaine and other street drugs, which she used
22  between the ages of 13 and 23.  A.R. 205.  As recently as March 5,
23  2003, plaintiff tested positive for marijuana.  A.R. 270.

24

25     On February 25, 2003, Inderpal Dhillon, M.D., examined plaintiff,

26  _____

27     [1]  On April 11, 2003, plaintiff previously applied for both
   Title II and SSI benefits, and these applications were denied on
28  July 10, 2003.  A.R. 3, 88-91.

                                   2

1   diagnosed her with a bipolar disorder I and prescribed psychiatric

2   medication to plaintiff.  A.R. 231.  Dr. Dhillon continued to treat

3   plaintiff, A.R. 317-32, and on October 20, 2004, opined plaintiff was

4   "markedly" limited in her ability to ask simple questions or request

5   assistance and extremely limited in her ability to: remember locations

6   and work-like procedures; understand, remember and carry out very

7   short and simple instructions; maintain attention and concentration

8   for extended periods; perform activities within a schedule, maintain

9   regular attendance, and be punctual within customary tolerances;

10  sustain an ordinary routine without special supervision; work in

11  coordination with or in proximity to others without being distracted

12  by them; make simple work-related decisions; interact appropriately

13  with the general public; accept instructions and respond appropriately

14  to criticism from supervisors; get along with co-workers or peers

15  without distracting them or exhibiting behavioral extremes; maintain

16  socially appropriate behavior and adhere to basic standards of

17  neatness and cleanliness; respond appropriately to changes in the work

18  setting; be aware of normal hazards and take appropriate precautions;

19  and set realistic goals or make plans independently of others.  A.R.

20  333-34.  Dr. Dhillon also opined plaintiff would miss three or more

21  days of work a month due to her condition, and noted plaintiff tried

22  to return to work but could not do so.  A.R. 334.

23

24       On August 30, 2006, Dr. Dhillon noted plaintiff "gets easily

25  depressed, evidenced by crying, anger, frustration, not sleeping,

26  marked anxiety and [an inability to] be around people."  A.R. 332.

27  Dr. Dhillon opined anxiety affects plaintiff's ability to concentrate

28  and "[i]f stress continues, she becomes paranoid and begins to hear

voices." <u>Id.</u>  Dr. Dhillon noted plaintiff "attempted to work in the past during her treatment . . . but soon decompensated . . . and was unable to return to work.  Her attempts to work lasted less than a month[,]" and Dr. Dhillon has advised her not to return to work.  <u>Id.</u> Finally, Dr. Dhillon concluded plaintiff "is unable to be gainfully employed" since her illness is chronic and long-term with exacerbations despite medication, and any stress tends to override the medication effects.  <u>Id.</u>

On June 15, 2003, Davy Qian, D.O., a psychiatrist, examined plaintiff and diagnosed her with an unspecified mood disorder and determined plaintiff had a GAF of 51.[2]   A.R. 235-40.  Dr. Qian concluded plaintiff is able to understand, remember and carry out simple one or two-step instructions, follow detailed and complex instructions, and perform work activities without special or additional supervision, and she is: "mildly-to-moderately" impaired in her ability to adapt to the stresses common to a normal work environment; "mildly" impaired in her ability to maintain concentration, attention, persistence, and pace as well as in her ability to associate with day-to-day work activity, including attendance and safety; and not impaired in her ability to interact appropriately with supervisors, co-workers, or the public or maintain regular attendance in the work place and perform work activities on a

---

[2]   A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 34 (4th ed. (Text Revision) 2000).

1  consistent basis.  A.R. 240.

2

3       On July 29, 2004, John S. Woodard, M.D., a neurologist and

4  psychiatrist, examined plaintiff and diagnosed her with a bipolar

5  disorder and polysubstance abuse, in remission.  A.R. 282-85.  Dr.

6  Woodard opined plaintiff is predisposed to substance abuse and has

7  work impairments caused by her affective disorder and significant mood

8  swings with overall mood elevation, disorganization of thought, and

9  probable judgment impairment.  A.R. 284.  More specifically, Dr.

10 Woodard found plaintiff has a "moderate" impairment in her ability to

11 complete a normal workweek without interruption; "slight-to-moderate"

12 impairment in withstanding normal workplace stresses and pressures,

13 maintaining concentration and attention, and interacting with the

14 public; "slight" impairment in her ability to interact with

15 supervisors and co-workers, perform detailed, complex tasks, and work

16 on a continuous basis without special supervision; and no impairment

17 in her ability to perform simple, repetitive tasks.  Id.  On March 16,

18 2005, Dr. Woodard reevaluated plaintiff, again diagnosed her with a

19 bipolar disorder, and again opined plaintiff has work impairments

20 caused by her affective disorder with mood swings, overall mood

21 elevation, disorganization of thought, and probable judgment

22 impairment.  A.R. 284, 310-15.  More specifically, Dr. Woodard found

23 plaintiff has: a "moderate" impairment in her ability to complete a

24 normal workweek without interruption; "slight-to-moderate" impairment

25 in her ability to maintain concentration and attention and interact

26 with the public; "slight" impairment in her ability to interact with

27 supervisors and co-workers, withstand normal workplace stresses and

28 pressures, and perform detailed, complex tasks; and no impairment in

1   her ability to perform simple, repetitive tasks and work on a
2   continuous basis without special supervision.   Id.

3

4        Medical expert David Glassmire, M.D., testified at the
5   administrative hearing in 2006 that plaintiff has a bipolar II
6   disorder and has abused marijuana.  A.R. 341-48, 358-63.  Dr.
7   Glassmire opined plaintiff has a "mild" restriction in her activities
8   of daily living, "moderate" difficulty maintaining social functioning
9   and concentration, persistence or pace, and has had no episodes of
10  decompensation.  A.R. 344.  Dr. Glassmire further opined plaintiff
11  should be limited to simple and repetitive tasks involving object-
12  oriented work with only occasional contact with the public, co-
13  workers, or supervisors and no tasks that require hypervigilance.
14  A.R. 345.  Given these limitations, Dr. Glassmire was of the opinion
15  plaintiff would not experience moderate difficulties in her ability to
16  perform within a schedule, maintain regular attendance, and complete a
17  normal workday and workweek without interruptions.  Id.  Dr. Glassmire
18  found little to support the limitations found by Dr. Dhillon, noting
19  that the person Dr. Dhillon described "would be somebody who likely
20  would have repeated in-patient hospitalizations, almost no ability to
21  care for themselves.  They would be basically completely dependent on
22  others for their activities of daily living."  A.R. 359.

23

24                          **DISCUSSION**
25                            **III**
26       The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
27  review the Commissioner's decision denying plaintiff disability
28  benefits to determine if his findings are supported by substantial

evidence and whether the Commissioner used the proper legal standards in reaching his decision.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1172 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-

step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting

from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since her alleged onset date, December 1, 2002. (Step One). The ALJ then found plaintiff has the severe impairments of a bipolar disorder without mania and marijuana abuse (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing.[3] (Step Three). The ALJ next determined plaintiff can perform her past relevant work as a housekeeper; therefore, she is not

_____

[3] In reaching this conclusion, the ALJ adopted Dr. Glassmire's opinion that plaintiff has "mild" restriction of the activities of daily living, "moderate" difficulties maintaining social functioning and concentration, persistence, or pace, and has had no episodes of decompensation. A.R. 15.

9

1  disabled.   (Step Four).

2

3                                    **IV**

4       A claimant's residual functional capacity ("RFC") is what she can

5  still do despite her physical, mental, nonexertional, and other

6  limitations.   <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001);

7  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

8  the ALJ found plaintiff has no physical limitations and has the RFC

9  "to perform short, simple instructions.  She is also limited to

10 object-oriented work and should not do tasks that require hyper-

11 vigilance.   Further, she may have only occasional contact with the

12 general public, coworkers and supervisors."  A.R. 15.   However,

13 plaintiff contends the RFC determination is not supported by

14 substantial evidence because the ALJ improperly rejected the opinions

15 of her treating physician, Dr. Dhillon, erroneously determined she was

16 not a credible witness, failed to properly consider the side effects

17 of her medications and lay witness evidence, and posed an incomplete

18 hypothetical question to the vocational expert.   There is no merit to

19 plaintiff's contentions.

20

21      **A.   Treating Physician's Opinion:**

22      The medical opinions of treating physicians are entitled to

23 special weight because the treating physician "is employed to cure and

24 has a greater opportunity to know and observe the patient as an

25 individual."  <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987);

26 <u>Morgan v. Comm'r of the Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir.

27 1999).   Therefore, the ALJ must provide clear and convincing reasons

28 for rejecting the uncontroverted opinion of a treating physician, <u>Ryan</u>

1  v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick,

2  157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is

3  contradicted by another doctor, the ALJ may not reject this opinion

4  without providing 'specific and legitimate reasons' supported by

5  substantial evidence in the record." Reddick, 157 F.3d at 725;

6  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

7

8      Dr. Dhillon opined plaintiff is gravely disabled and is not able

9  to function psychologically, A.R. 333-34; thus, "she is unable to be

10 gainfully employed." A.R. 332.  In Dr. Dhillon's opinion, plaintiff

11 is even unable to understand, remember, and carry out very short and

12 simple instructions or make simple work-related decisions.  A.R. 333.

13 However, the ALJ rejected Dr. Dhillon's opinions as "not fully

14 supported by the objective evidence or his own treatment notes. . . .

15 There is an absence of any psychological testing.  Instead, Dr.

16 Dhillion's [sic] evaluations appear to be based largely on recitations

17 of the [plaintiff's] statements and complaints; they are tainted by

18 the [plaintiff's] objective to obtain a report which states that she

19 is disabled in order to receive disability benefits." A.R. 17.

20 Further, the ALJ found plaintiff's "subjective allegations are not

21 fully reliable." Id.  Rather, the ALJ relied on Dr. Glassmire, who

22 testified that "there is no evidence of extreme limitations in all

23 mental categories as specified by Dr. Dhillion [sic].  The medical

24 expert stated that a person with extreme limitations in all of those

25 areas would likely have repeated inpatient hospitalizations with

26 almost no ability to care for herself, and she would be completely

27 dependent on others for her activities of daily living." Id.

28 Finally, the ALJ also commented that Dr. Dhillon "does not indicate

1  how long the claimant has been unable to undertake gainful employ-

2  ment."[4]  Id.

3

4      An ALJ may properly reject a treating or examining physician's

5  report that is inconsistent with the physician's medical records,

6  Tommasetti, 533 F.3d at 1041; Bayliss v. Barnhart, 427 F.3d 1211, 1216

7  (9th Cir. 2005), or with the medical record as a whole.  Batson v.

8  Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004);

9  Morgan, 169 F.3d at 602.  "An ALJ may [also] reject a treating

10 physician's opinion if it is based 'to a large extent' on a claimant's

11 self-reports that have been properly discounted as incredible."

12 Tommasetti, 533 F.3d at 1041 (citations omitted); Bayliss, 427 F.3d at

13 1217.  Here, as Dr. Glassmire fully explained, A.R. 359, Dr. Dhillon's

14 opinions are neither supported by his own medical records, which

15 largely document plaintiff's subjective complaints, see, e.g., A.R.

16 317-32, nor are they supported by any other medical evidence in the

17 record.  See, e.g., A.R. 235-40, 282-85, 310-15.  Moreover, as

18 discussed below, the ALJ properly rejected plaintiff's subjective

19 complaints.  Therefore, the ALJ provided specific and legitimate

20 reasons supported by substantial evidence in the record for rejecting

21 Dr. Dhillon's opinions.  Bayliss, 427 F.3d at 1217; Batson, 359 F.3d

22 at 1195.

23 //

24 //

25      [4]  The plaintiff claims the ALJ should have recontacted Dr.
   Dhillon to clarify this statement.  However, that is not so since
26 "[t]he record before the ALJ was neither ambiguous nor inadequate
   to allow for proper evaluation of the evidence."  Mayes, 276 F.3d
27 at 460.  Therefore, the ALJ did not fail to properly develop the
28 medical record.

                                    12

**B.   Credibility**:

The plaintiff testified at the administrative hearing that she experiences mood swings and is sometimes really depressed, sometimes really angry, and sometimes violent.  A.R. 337.  She stated that once or twice a week she wants to grab someone by the throat and get them out of her way.  A.R. 337-38.  She also stated she has thoughts of hurting herself, and she "usually" cuts herself.  A.R. 338.  Further, plaintiff testified she also has panic attacks, during which her heart starts beating fast, she feels tingly and wants to pass out, and she often has to leave public places.  A.R. 340.  Finally, plaintiff stated she has problems concentrating, A.R. 341, and she sleeps erratically, sometimes staying up for two days in a row before sleeping for a week.  A.R. 340.

Once a claimant has presented objective evidence she suffers from an impairment that could cause pain or other nonexertional limitations,[5] the ALJ may not discredit the claimant's testimony solely because the symptoms alleged by the claimant are not supported by objective medical evidence.  Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).  Rather, the ALJ "'must provide specific, cogent reasons for the disbelief.'"  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007).  Such reasons may include "reputation for truthfulness,

---

[5]   "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms."  Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

1  inconsistencies in testimony or between testimony and conduct, daily
2  activities, and 'unexplained, or inadequately explained, failure to
3  seek treatment or follow a prescribed course of treatment.'"  <u>Orn</u>, 495
4  F.3d at 636 (citations omitted); <u>Thomas v. Barnhart</u>, 278 F.3d 947,
5  958-59 (9th Cir. 2002).  Furthermore, if there is no evidence
6  affirmatively suggesting the claimant is malingering, the ALJ's
7  reasons for rejecting the claimant's subjective testimony must be
8  "clear and convincing."  <u>Carmickle</u>, 533 F.3d at 1160; <u>Morgan</u>, 169 F.3d
9  at 599.

11      Here, the ALJ found plaintiff's "activities of daily living are
12  not consistent with the alleged degree of pain and impairment."  A.R.
13  18.  Specifically, the ALJ found:

15      [Plaintiff's] activities tend to show that she does have the
16      ability to perform work, if motivated to do so, in that she
17      does household chores such as cooking, washing dishes, doing
18      laundry, and cleaning the bathroom, plays guitar, drives a
19      car, attends church services regularly once per week,
20      dresses, grooms, watches television, reads, listens to the
21      radio, manages money, goes out alone, and socializes with
22      others.  In addition, she stated that on a daily basis, she
23      takes her son to school, picks him up from school, helps him
24      get a snack and helps him to do his homework.  She also
25      claimed that she is able to sort out food and clothes for
26      poor people in her church.

28  <u>Id.</u>  The ALJ's findings are supported by substantial evidence in the

record, A.R. 141-43, 182-85, 237, 239,[6] and plaintiff's "ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity."  Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990); Stubbs-Danielson, 539 F.3d at 1175.

The ALJ also found plaintiff's "credibility is reduced by the lack of objective medical evidence to substantiate her claims" since "several doctors find her to be much more capable than she claims[,]" A.R. 18, and substantial evidence in the record supports this finding.  See, e.g., A.R. 239-40, 252, 256-57, 284-85, 312, 345; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  Here, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  Carmickle, 533 F.3d at 1161; Stubbs-Danielson, 539 F.3d at 1175; cf. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disability effects.").  Thus, "[t]he ALJ's reasons for his [adverse] credibility determination were clear and convincing, sufficiently specific, and supported by substantial evidence."  Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003); Burch, 400 F.3d at 681.

//

---

[6]    Indeed, examining psychiatrist Dr. Qian in 2003 commented that "[b]ased on [plaintiff's] function of daily activity, her psychiatric condition is quite nicely controlled since "[s]he is able to take care of herself and her son . . . [and] go to church and help sort out food and clothes for poor people."  A.R. 239.

1     **C.   Side Effects:**

2          The ALJ must consider all factors that might have a significant

3     impact on a claimant's ability to work, including the side effects of

4     medication.   Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993);

5     Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.

6     1988).   Thus, when a claimant testifies she is experiencing a side

7     effect known to be associated with a particular medication, the ALJ

8     may disregard the testimony only if he "support[s] that decision with

9     specific findings similar to those required for excess pain testimony,

10    as long as the side effects are in fact associated with the claimant's

11    medication(s)."   Varney, 846 F.2d at 585.

12

13         The plaintiff contends the ALJ erred in failing to consider the

14    side effects she experiences from Seroquel,[7] which she takes every

15    night and which she asserts makes her sleepy.   A.R. 340-41.

16    Additionally, plaintiff also complains that Buspar,[8] Clonazepam,[9]

17

18         [7]   "Seroquel combats the symptoms of schizophrenia, a mental

19    disorder marked by delusions, hallucinations, disrupted thinking,

20    and loss of contact with reality."   The PDR Family Guide to
      Prescription Drugs, 610 (8th ed. 2000).   Drowsiness and dizziness

21    are common side effects of Seroquel.   Id.

22         [8]   "Buspar is used in the treatment of anxiety disorders and
      for short-term relief of the symptoms of anxiety."   The PDR

23    Family Guide to Prescription Drugs at 95.   Fatigue is a common
      side effect of Buspar, while diarrhea is a less common, but

24    recognized, side effect.   Id.

25         [9]   Clonazepam, also called "Klonopin[,] is used alone or

26    along with other medications to treat convulsive disorders such
      as epilepsy.   It is also prescribed for panic disorder –

27    unexpected attacks of overwhelming panic accompanied by fear of
      recurrence."   Id. at 338.   Dizziness and sleepiness are

28    recognized side effects of Clonazepam.   Id. at 339.

Lexapro[10] and Lithium[11] make her sleepy, Clonazepam and Seroquel also make her dizzy, and Buspar and Wellbutrin[12] give her diarrhea.  A.R. 191.

Although all of these medications have well known side-effects, there is no evidence in the record that plaintiff ever complained to any physician about the side effects she now complains of from the various medications she takes.  To the contrary, plaintiff's treatment records show she was **not** experiencing any side effects from her medications.  See A.R. 215, 217, 219, 228, 230, 272, 317-19, 321-22, 325-27, 330-31.  Therefore, the ALJ did not err in not considering the alleged side effects of plaintiff's medications.  See Greger, 464 F.3d at 973 (ALJ did not err in assessing claimant's RFC when claimant did not report alleged side effect of fatigue to any doctors); McFarland

---

[10]  Lexapro is indicated for the treatment of major depressive disorder and generalized anxiety disorder. Physician's Desk Reference, 1176 (62nd ed. 2008).  Fatigue is a recognized side effect of Lexapro.  Id. at 1179.

[11]  Lithium, also called Lithonate, "is used to treat the manic episodes of manic-depressive illness, a condition in which a person's mood swings from depression to excessive excitement." The PDR Family Guide to Prescription Drugs at 363.  Sleepiness is a recognized side effect of Lithium.  Id. at 364.

[12]  "Wellbutrin . . is given to help relieve certain kinds of major depression.  [¶]  Major depression involves a severely depressed mood (for 2 weeks or more) and loss of interest or pleasure in usual activities accompanied by sleep and appetite disturbances, agitation or lack of energy, feelings of guilt or worthlessness, decreased sex drive, inability to concentrate, and perhaps thoughts of suicide.  [¶]  Unlike the more familiar tricyclic antidepressants, such as Elavil, Tofranil, and others, Wellbutrin tends to have a somewhat stimulating effect."  Id. at 737.  Diarrhea is not a recognized side effect of Wellbutrin. Id. at 737-38.

17

v. Astrue, 2008 WL 2875315, *2 (9th Cir. (Or.)) ("ALJ did not err in failing to address side effects of medication in his decision" where claimant "points to no specific evidence in the record where he complained of medication side effects" and "the record is replete with statements by [the claimant] to medical care providers that he was not experiencing side effects from his various medications.").[13]

### D. Lay Witness Testimony:

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Parra, 481 F.3d at 750. Such lay testimony includes third party daily activity questionnaires, which are "an important source of information about a claimant's impairments." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999); Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).

Here, the ALJ considered the lay evidence, including the third party daily activity questionnaires completed by plaintiff's husband, Darrell Honore, and her father, Richard J. Montgomery, see A.R. 135-40, 164-73, but rejected these lay opinions because, among other reasons, they conflicted with the probative medical evidence, relied upon plaintiff's subjective complaints, were somewhat inconsistent with plaintiff's subjective complaints, and because the declarants had a financial interest in the outcome of the case. A.R. 18-19. Thus, the ALJ provided reasons germane to each witness for rejecting these

[13] See Fed. R. App. P. 32.1(a); Ninth Circuit Rule 36-3(b).

18

1    opinions.  <u>Greger</u>, 464 F.3d at 972; <u>Lewis</u>, 236 F.3d at 511.

2

3        **E.   Vocational Expert's Testimony:**

4        Vocational expert David Rhinehart testified that a hypothetical

5    individual of plaintiff's age, education, work experience and RFC can

6    perform plaintiff's past relevant work as a housekeeper, A.R. 364-65,

7    and, based on this testimony, the ALJ determined in Step Four that

8    plaintiff can perform her past relevant work as a housekeeper.  A.R.

9    19.  However, plaintiff contends this Step Four determination is not

10   supported by substantial evidence because the hypothetical question to

11   the vocational expert did not contain Dr. Dhillon's opinions or the

12   side effects of plaintiff's medications.  There is no merit to this

13   claim for the reasons discussed above.  Specifically, both Dr.

14   Dhillon's opinions and the alleged side-effects from medications were

15   properly discredited by the ALJ; thus, they were not vital to the

16   hypothetical question to the vocational expert.  <u>Stubbs-Danielson</u>, 539

17   F.3d at 1175-76; <u>Bayliss</u>, 427 F.3d at 1217.  As such, the vocational

18   expert's testimony constitutes substantial evidence to support the

19   ALJ's Step Four determination that plaintiff can perform her past

20   relevant work.

21

22                               **ORDER**

23       IT IS ORDERED that: (1) plaintiff's request for relief is denied;

24   and (2) the Commissioner's decision is affirmed, and Judgment shall be

25   entered in favor of defendant.

26

27   DATE:  _November 25, 2008_          _/s/ ROSALYN M. CHAPMAN_
                                          ROSALYN M. CHAPMAN
28                                        UNITED STATES MAGISTRATE JUDGE

                                  19

1   R&R-MDO\08-0894.mdo
    11/25/08

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28